UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARBARA McCRARY,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 09-1784 (JEB)

## MEMORANDUM OPINION

Barbara McCrary, on behalf of her minor daughter S.M., filed a Due Process Complaint Notice under the Individuals with Disabilities Education Act, alleging that her daughter had been denied a free and appropriate public education as required by law. Following a due process hearing and the issuance of a Hearing Officer's Determination, Plaintiff filed this action for attorney fees under the IDEA. Because the Court finds that Plaintiff was not the prevailing party in the hearing below, the Court will deny Plaintiff's request.

**I.    Background**

    A. The IDEA Statutory Framework

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under the IDEA, school districts are required to adopt procedures to ensure appropriate

1

educational placement of disabled students.  See 20 U.S.C. § 1413.  A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" or "individualized education program team."  § 1414.  Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE.  See § 1414(d)(1)(B).

School districts must also develop a comprehensive plan, known as an individualized education program (IEP), for meeting the special educational needs of each disabled student.  See § 1414(d)(2)(A).  The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade."  Rowley, 458 U.S. at 204.  "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school."  Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted).

The IDEA requires that children with disabilities be placed in the "least restrictive environment" so that they can be educated in an integrated setting with children who are not disabled to the maximum extent appropriate.  See § 1412(a)(5)(A).  The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process.  See §§ 1414(e), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses."

§ 1415(h). A qualified impartial hearing officer conducts the due process hearing in accordance with the Act. 5 D.C. Mun. Regs. §§ 3030.11, 3030.13.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. § 1415(i)(2)(A); 5 D.C. Mun. Regs. § 3031.5. The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate" under the IDEA as guided by the goals of the Act. § 1415(i)(2)(C)(iii).

The IDEA gives this Court authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in an action under the IDEA. 20 U.S.C. § 1415(i)(3)(B)(i)(I). This includes the authority to award fees to a party who has prevailed in an administrative due process hearing. See Moore v. District of Columbia, 907 F.2d 165, 166 (D.C. Cir. 1990).

B. S.M.'s Education

S.M. was a disabled sixteen-year-old high-school student during the 2008-09 school year. Hearing Officer's Determination ("HOD") at 4. She had attended three schools in three years: a District of Columbia public charter school in 2006-07 (the "Public Charter"), a charter school in 2007-08 (the "Charter"), and a private school selected by her mother in 2008-09 (the "Private School"). Id. During the 2006-07 school year, while S.M. was in ninth grade at the Public Charter, she began "skipping school," accumulated "excessive absences," and "basically received all Fs there." Id. at 5. "After the Public Charter retained [S.M.] in the 9th grade, [Plaintiff] withdrew [S.M.] from the Public Charter and placed her in the Charter." Id.

During Fall 2007, the Charter conducted various evaluations of S.M. and prepared an IEP for her. Id. at 4. S.M. was classified as having multiple disabilities and, pursuant to the IEP, was

3

"to receive 13 hours of specialized instruction, 1 hour of speech and language services, .5 hour of occupational therapy services, and 1 hour of psychological counseling services, for a total of 15.5 hours of special education and related services each week. . . . [S.M.] was also afforded planning services, which consisted of collaborations between her special education and general education teachers . . . ." Id. at 4-5. Although S.M. continued to have unexcused absences at the Charter, her "final report card for SY 2007/08 reveals that she passed all of the [required] classes she took at the Charter," and Plaintiff "did not have any concerns about [S.M.]'s progress at the Charter, because [she] was getting her work done and she was improving." Id. at 5-6.

In Fall 2008, Plaintiff was told by the Charter that S.M. had not been registered for the coming school year and, as the school was full, would have to be placed on the waiting list. Id. at 6. Instead of placing S.M. on the waiting list, Plaintiff made the unilateral decision to enroll her at the Private School. Id. Plaintiff did not, however, pay S.M.'s Private School tuition. Id. S.M. began to accumulate unexcused absences at the Private School as well, and "the head of the Private School was unable to explain exactly how the school ensures that [S.M.] receives the proper amount of specialized instruction called for by her IEP while the special education staff are rotating through the classrooms." Id. at 7.

On October 15, 2008, Plaintiff filed a Due Process Complaint Notice against DCPS and the Charter, alleging that DCPS and the Charter "denied [S.M.] a free appropriate public education ('FAPE') by failing to (1) evaluate [S.M.] as requested by [Plaintiff] through counsel, (2) complete [S.M.]'s triennial evaluations, (3) evaluate [S.M.] in all areas of suspected disability, (4) complete a comprehensive and appropriate vocational plan, (5) provide [S.M.] with an appropriate IEP, (6) provide [S.M.] with all appropriate special education and related services, develop a vocational/transition plan, and provide transition services, and (7) convene a

4

placement meeting for [S.M.] and provide an appropriate placement." Id. at 2. Plaintiff later voluntarily withdrew claims (1) and (3). Id. at 3.

In that proceeding, Plaintiff requested the following relief: that DCPS and the Charter "fund the independent completion of the needed evaluations of the student, i.e., a psycho-educational/clinical evaluation, a psychological evaluation, Vineland, vocational and social history evaluations"; "convene an MDT meeting within ten (10) days to review the evaluations, develop an appropriate IEP, discuss compensatory education, as well as develop an appropriate compensatory education plan, and to provide all necessary special education and related services for the student"; "develop an appropriate and comprehensive result-oriented transitional plan for the student and to immediately implement the appropriate and comprehensive result-oriented plan for the student"; "issue a Prior Notice of Placement and fund S[.M.] at an appropriate placement of parent's choice, [the Private] School"; and "provide reasonable attorney fees." Due Process Complaint Notice at 5.

On January 15 and February 2, 2009, a due process hearing took place before Hearing Officer Kimm Massey. Id. at 1, 3. On February 21, 2009, the hearing officer issued the following Order:

    1. Petitioner is awarded a finding that DCPS denied Student a FAPE by failing to provide her with an appropriate placement during SY[] 2006/07 when she attended the Public Charter.

    2. In all other respects, Petitioner's October 15, 2008 Complaint is **DISMISS[ED] ON THE MERITS**, and its requests for relief therein are **DENIED**.

    3. Within a reasonable time after the issuance of this Order, DCPS shall convene a Placement meeting to determine an appropriate placement for Student for the remainder of SY 2008/09 and moving forward. Should DCPS fail to convene such a meeting within two weeks of the issuance of this Order, Petitioner's counsel shall request such a meeting in writing on Parent's behalf.

5

Id. at 10 (emphasis in original). In her written HOD, the hearing officer found that Plaintiff had failed to meet the burden of proof for claims (2), (4), (5), and (6) relating to S.M.'s triennial evaluations, vocational plan, IEP, and special education and related services. Id. at 7-10. Only claim (7) remained.

With respect to that claim – namely, that DCPS and the Charter failed to "convene a placement meeting for [S.M.] and provide an appropriate placement" – the hearing officer considered S.M.'s placement at each of the three schools she attended separately. Id. at 9-10. She first found S.M. "did not receive educational benefit at the Public Charter, and that, therefore, the Public Charter was an inappropriate placement for" S.M. Id. at 9. This placement was remedied the following year, however, when S.M. transferred to the Charter, which the hearing officer found to be "not an inappropriate placement." Id. The hearing officer concluded: "As the Charter was not an inappropriate placement for [S.M.], it follows that the Charter was not obligated to convene a placement meeting for [S.M.] during SY 2007/08. To the extent Petitioner argued that the Charter was obligated to convene a placement meeting for Student when it was determined that it had no space for her at the beginning of SY 2008/09, . . . this is not a cognizable claim because it was not alleged in the Complaint, and the Charter has not agreed to have the hearing officer consider the claim." Id. at 9 (citing 34 C.F.R. § 300.511(d) (party requesting hearing may not raise issues at due process hearing that were not raised in due process complaint, unless other party agrees)).

Finally, the hearing officer addressed and rejected Plaintiff's request to have DCPS pay S.M.'s Private School tuition. She reasoned:

> Petitioner has requested that the hearing officer require DCPS and/or the Charter to fund Student's unilateral placement at the Private School upon finding that DCPS and/or the Charter failed to provide Student with an appropriate placement. The hearing officer

> determined above that DCPS failed to provide Student with an appropriate placement during SY 2006/07 when she attended the Public Charter. However, because Parent subsequently placed Student in the Charter, a school of choice that proved to be an appropriate placement for Student during SY 2007/08, an Order requiring DCPS to fund Student at a private placement that was unilaterally chosen by Parent for . . . SY 2008/09 seems highly inappropriate. In any event, the evidence presented at the due process hearing does not establish that the Private School can ensure Student receives the specialized instruction her IEP requires.

Id. at 9-10.

Having received the HOD, Plaintiff then brought this action, initially filed in D.C. Superior Court in August 2009, seeking attorney fees under 20 U.S.C. § 1415(i)(3). Complaint, ¶¶ 4, 7. Defendants filed their Notice of Removal to this Court the next month. Id., ¶ 6. Notably, the parties do not challenge the hearing officer's determination on any of the issues presented. The only dispute pertains to attorney fees. Plaintiff alleges that "she prevailed at the due process hearing" because the hearing officer granted the relief she sought; as a result, she claims, she is entitled to fees in the amount of $15,139.30 "minus the amount already paid by the DCPS," and to "court costs and attorney's fees for the current action." Id., ¶¶ 5, A. Defendants dispute the threshold question that Plaintiff actually prevailed.

On February 25 and March 4, 2010, respectively, Defendants and Plaintiff filed cross-motions for summary judgment, which the Court now considers.[1]

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

---

[1] In deciding the pending Motions, the Court has reviewed Plaintiff's Amended Complaint, Defendants' Motion for Summary Judgment, Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, Defendants' Reply to Plaintiff's Opposition, Plaintiff's Reply to Defendants' Opposition, and Defendants' Surreply.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. Liberty Lobby, 477 U.S. at 248. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987); Liberty Lobby, 477 U.S. at 251-52 (court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

The question of whether Plaintiff is a "prevailing party" for the purpose of § 1415(i)(3)(B) is "a question of law" that this Court will decide "based on the administrative record and the hearing officer's decision." Artis v. District of Columbia, 543 F. Supp. 2d 15, 22 (D.D.C. 2008); see also District of Columbia v. West, 699 F. Supp. 2d 273, 278 (D.D.C. 2010) (in action for attorney fees under IDEA, it is this Court, and "'not the hearing officer in the administrative proceeding, which determines prevailing party status'") (quoting District of Columbia v. Straus, 607 F. Supp. 2d 180, 183 (D.D.C. 2009)).

**III.    Analysis**

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B)(i)(I). The parties' cross-motions for summary judgment present two legal questions arising from the hearing officer's findings: first, whether Plaintiff was the prevailing party at the due process hearing; and second, whether the attorney fees Plaintiff seeks are reasonable. Because the Court

8

finds that Plaintiff was not the prevailing party below, it need not address the reasonableness of the fees sought.

Defendants contend that, although the hearing officer found that "DCPS had denied the student a FAPE for the 2006/2007 school year by failing to provide her an appropriate placement[,]" she "declined . . . to award any relief to Plaintiff" on this claim. Def. Mot. at 2. The hearing officer's "finding of a denial of a FAPE" alone, Defendants argue, "did not make Plaintiff a prevailing party." Id. at 5. Defendants further assert that the hearing officer's order that the parties convene to conduct a placement meeting for the 2008-09 school year "had nothing to do with the relief sought by the Plaintiff, did not change the legal relationship between the parties and did not confer prevailing party status upon the Plaintiff." Id. at 6.

Plaintiff, in response, points to the HOD, Section VII (ORDER), paragraphs 1 and 3, as evidence that she is the prevailing party. See Plf. Mot. at 5. She urges the Court to read paragraphs 1 and 3 together, suggesting that the hearing officer's finding that S.M. was denied a FAPE due to inappropriate placement during the 2006-07 school year was a judgment in her favor constituting a "'material alteration in the legal relationship of the parties,'" and that the hearing officer's order to the parties to meet to determine appropriate placement for S.M. for the 2008-09 school year constituted judicial relief for the violation. Plf. Reply at 2 (quoting Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, 604 (2001)).

In determining whether Plaintiff qualifies as a "prevailing party" for purposes of § 1415(i)(3)(B), this Court applies the standard articulated by the U.S. Supreme Court in Buckhannon, 532 U.S. 598. See Alegria v. District of Columbia, 391 F.3d 262, 263 (D.C. Cir. 2004) ("In the absence of clear evidence that Congress intended the IDEA's fee eligibility to be

treated differently than other fee-shifting statutes, and specifically, to allow awards of attorneys' fees for private settlements, we hold that appellants fail to overcome the presumption that Buckhannon applies."); District of Columbia v. Straus, 590 F.3d 898, 901 (D.C. Cir. 2010) (affirming denial of attorney fees on ground that petitioner was not "prevailing party" under Buckhannon). Specifically, courts in this Circuit apply "'a three-part test for determining prevailing-party status: (1) there must be a "court-ordered change in the legal relationship" of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief.'" Straus, 590 F.3d at 901 (quoting Thomas v. National Science Foundation, 330 F.3d 486, 492-93 (D.C. Cir. 2003)).

The Court finds, and Defendants do not contest, that Plaintiff succeeded in obtaining a judgment in her favor on the limited issue of S.M.'s placement during the 2006-07 school year; she has, therefore, at least in part, satisfied prong two. See HOD at 10 ("Petitioner is awarded a finding that DCPS denied Student a FAPE by failing to provide her with an appropriate placement during SY[] 2006/07").[2] Merely obtaining a judgment in her favor is not enough, however, without a court-ordered change in the legal relationship of the parties and an accompanying award of relief, to make Plaintiff a prevailing party.

The D.C. Circuit has previously held that "a plaintiff is not a 'prevailing party' under a fee-shifting statute simply by virtue of having 'acquired a judicial pronouncement that the defendant has violated the [law] unaccompanied by judicial relief.'" Thomas, 330 F.3d at 488

---

[2] The HOD makes equally clear, however, that the inappropriateness of S.M.'s placement during the 2006-07 school year was the only claim for which judgment was entered in favor of Plaintiff. Id. ("In all other respects, Petitioner's October 15, 2008 Complaint is **DISMISS[ED] ON THE MERITS**, and its requests for relief therein are **DENIED**."). Plaintiff's suggestion that the HOD implies a judgment in her favor on the question of the appropriateness of S.M.'s placement during the 2008-09 school year is belied by the facts. Plaintiff urges the Court to "ask why would the DCPS be ordered to convene a meeting to determine an appropriate placement if the Student was appropriately placed by Defendants for the SY 2008/09." Plf. Mot. at 5. But the HOD reveals that it was not DCPS, but rather Plaintiff, who unilaterally placed S.M. in the Private School at the beginning of the 2008-09 school year. It is thus Plaintiff's placement of her daughter that the hearing officer found inappropriate. HOD at 9.

10

(quoting Buckhannon, 532 U.S. at 606).  Thomas arose from an agreement between the National Science Foundation and Network Solutions, Inc. to collect fees for Internet registration services, but required that 30% of those fees be deposited in a fund for future government use on Internet projects.  Id.  Plaintiffs, Internet domain name registrants who had paid the fee, sued to enjoin the NSF and NSI from spending any money in the fund and to recover restitution.  Id.  The court awarded the plaintiffs a preliminary injunction and partial summary judgment on the ground that the fees amounted to an unconstitutional "tax that was neither imposed nor ratified by Congress," but failed to award any money damages.  Id.  Before the court was able to render final judgment or issue any specific relief, Congress ratified the registration fee, thereby mooting the claim.  Id.  The plaintiffs sought attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), but the court found, "This type of 'judicial decree' is not enough to warrant a fee award . . . .  A declaration must require 'some action (or cessation of action) by the defendant that the judgment produces – the payment of damages, or specific performance or the termination of some conduct.'"  Id. at 494 (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)).

To the extent that other opinions in this district contain language that seemingly suggests that a denial of a FAPE alone makes a plaintiff the prevailing party, see, e.g., Wilson v. District of Columbia, 269 F.R.D. 8 (D.D.C. 2010); Artis, 543 F. Supp. 2d 15, not only is this not the law of our Circuit, but these cases are also distinguishable because in both actual relief was granted.

Having determined that succeeding on prong two alone is not enough, the Court now turns to prongs one and three.  It is here that Plaintiff's argument founders.  A review of the HOD makes clear that the hearing officer's finding that S.M. was denied a FAPE during the 2006-07 school year was a pronouncement unaccompanied by a court-ordered change in the parties' legal relationship or judicial relief.

First and foremost, the hearing officer expressly denied all of the forms of relief Plaintiff sought at the hearing – *e.g.*, the funding of various evaluations, the development of a compensatory education plan, and the payment of tuition at the Private School. See Due Process Complaint Notice at 5. The only conceivable relief awarded, therefore, was the requirement that the parties convene a placement meeting.

Yet this requirement cannot constitute judicial relief in Plaintiff's favor because this is precisely the "relief" that would have been awarded had Defendants prevailed on the issue of a FAPE. Plaintiff sought tuition reimbursement following her unilateral decision to enroll S.M. in the Private School, but the hearing officer denied her claim. HOD at 10. Since she apparently could not keep S.M. enrolled there without reimbursement, she had to meet with DCPS to come up with another placement going forward. This is all that was ordered by the HOD. Thus the convening of a placement meeting affords no judicial relief to Plaintiff; instead, it is a necessary step so that both parties can move on from Plaintiff's inappropriate placement of S.M. at the Private School.

It should also be noted that, contrary to Plaintiff's assertion, the hearing officer did not order the placement meeting for the 2008-09 school year as relief for the 2006-07 improper placement. Although S.M.'s improper placement in 2006-07 resulted in the denial of a FAPE for that school year, this improper placement was remedied the following year when S.M. attended the Charter. Id. at 9. S.M.'s appropriate placement at the Charter obviated the need for a placement meeting in 2007-08. Id. The hearing officer explicitly rejected as waived Plaintiff's claim against the Charter for not holding a placement meeting for S.M. at the start of the 2008-09 school year before her enrollment in the Private School. Id.

Finally, Plaintiff's suggestion that she is a prevailing party because "she achieved the desired result she sought in bringing the suit due to" the fact that "the due process hearing below brought about a voluntary change in Defendants DCPS' conduct" is without merit. Plf. Reply at 2. It is unclear what conduct DCPS changed. But even if the suit did change DCPS's conduct, Plaintiff describes the very "catalyst theory" that the Supreme Court rejected in <u>Buckhannon</u>. <u>See</u> 532 U.S. at 600 ("The question presented here is whether th[e] term ['prevailing party'] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not."); <u>Smith v. District of Columbia</u>, No. 03-7130, 2004 WL 2786389, at *1 (D.C. Cir. Dec. 3, 2004) ("the term 'prevailing party' does not cover plaintiffs who merely catalyze government action") (citing <u>Buckhannon</u>, 532 U.S. at 610). Similarly, where the parties settle before judicial relief is granted, or a case is dismissed for mootness, prevailing-party status will not be conferred. <u>Smith</u>, 2004 WL 2786389 at *1 ("plaintiffs who settle IDEA cases before securing a decision in an administrative hearing are not 'prevailing parties' entitled to fees"); <u>Straus</u>, 590 F.3d at 899 (affirming denial of defendant's attorney fees where plaintiff's claims were dismissed as moot).

As Plaintiff has thus failed to establish that she was the prevailing party at the due process hearing, she is not entitled to attorney fees under the IDEA.

### IV. Conclusion

The Court, therefore, ORDERS that:

1. Plaintiff's Motion for Summary Judgment is DENIED;

2. Defendants' Motion for Summary Judgment is GRANTED; and

3. The case is DISMISSED.

13

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 16, 2011